# SUPERIOR COURT NO. 3 OF BALTIMORE CITY.

Filed April 11, 1913.

EDWARD A. WEILER

VS.

EDWARD L. WARD AND RICHARD B. TIPPETT.

*Myer Rosenbush* for plaintiff.
*Vernon Cook* for defendants.

BOND, J. (Orally)—

The court (orally)—Gentlemen, in your case of Weiler vs. Ward and Tippett, I shall take up the prayers first. I mutilated somewhat the plaintiff's first and second prayers in an effort to modify them to agree with my views of the law, and after having corrected them, I concluded that they should be refused, both of them, and, therefore, I have marked them on the side to restore the deleted portions.

The first prayer, Mr. Rosenbush, I think, lays down too broad a rule as a basis for suit for malicious prosecution. It requires that the defendants be found simply to have aided and assisted in procuring an arrest. That is too broad, in view of the interposition of the District Attorney and other public officials in procuring an arrest. That, in my opinion, would not be altogether proper.

Mr. Rosenbush—I have based my prayers on the Jones and Marsh case, in which case they were favorably decided by the Court of Appeals.

The Court—I refuse that prayer and the second prayer. The second does not seem to fit the facts in this case.

Your conclusion is that after having consulted the District Attorney or the Assistant District Attorneys, that the defendants then acted themselves, whereas the warrant was ordered issued by the District Attorney.

The third prayer I have granted.

As I have said, the first prayer of the defendant is refused. The plaintiff's second prayer, regarding Mr. Tippett, does not seem to me to be clearly correct in its recital of facts, so I refuse that prayer. As I shall later mention, I find for Mr. Tippett on the facts so this prayer is of no importance in this case. The third I have granted. The fourth I have also granted.

Mr. Cook—Of course, your Honor, we note all the usual exceptions.

(Exceptions taken to all adverse rulings of the Court.)

The Court—Now, upon the facts. I think, gentlemen, as long as the essential points are not free from doubt, it will be more satisfactory to you if I give you in some detail the view I take of the facts, through the medium of the evidence that has been produced. It seems pretty clear, in the first place, what the real situation was, whatever may have been the outside appearances which must be considered as a test of the defendant's actions. Of course, it appears perfectly clear now that Mr. Weiler was a member of the Protective Association, and as such his name was properly entered on the lists. It seems that a copy of that list was given to Mr. Ward, the attorney for the association, wrongly copied off by an office boy, so that "Edward A. Weiler" appeared as "Edward A. White," at the same address, on that copy of the list. Mr. Ward's letters were naturally addressed to Edward A. White. The postman delivered those to Mr. Weiler, thinking that they were incorrectly addressed and that they were for Mr. Weiler. And, accordingly, Mr. Weiler opened them to see if the mail was intended for him and found that it was; so the mail reached and was in fact opened by the person for whom it was intended. There is nothing to cause comment in that situation, any comment adverse to Mr. Weiler. And yet that situation, trifling and innocent as it is, is the one out of which this prosecution has grown.

Of course, as these prayers point out, the mere innocence of the plaintiff in the malicious prosecution suit does not determine the question before us. That is merely a first step, and as Mr. Cook has pointed out from some of the cases from which he has read, there is probably a duty on the man who upon all the appearances, exercising reasonable caution, believes another to be committing a crime, to bring him, at least, before the prosecuting officer. And that duty the law will protect even at the cost of some suffering to a man who is really innocent. And as has been pointed out, and as is stated in the prayers, the prosecution can form a basis for action only when it has been prompted by what the law calls malice, and without such reasonable cause as would lead an ordinarily cautious man to believe a crime had been committed. And, of course, I bear in mind that in this kind of case hindsight and the fact of actual innocence are particularly apt to mislead us. The facts are these as I see them from the evidence: Upon the mail matter to Mr. Weiler under the name of White, Mr. Rosenbush, then a member of the grievance committee of the Bar Association, made complaint to that committee, or rather laid that mail before the committee for the purpose of determining whether there had been champerty or any breach of the ethics required of the members of the bar; and Mr. Ward was informed that a complaint was made upon this White letter. I think that not unnaturally Mr. Ward assumed there was a real man by the name of White. But upon investigation he found there was no White at the address mentioned. There was an Edward A. Weiler only there, and just what Mr. Ward's conclusions in that situation were does not seem to be altogether clear. Sometimes it is stated in the evidence that his conclusion was that White was an assumed name. Yet I understood from the testimony yesterday that Mr. Ward assumed that there was such a man existing, right up to the time of the prosecution, as Mr. White, and that Mr. Weiler had been receiving that Mr. White's mail.

Whatever the justice or injustice of Mr. Ward's grievance arising from the matter of laying the case before the Bar Association may be, however, he may have been entitled to retaliate; I think that is all a matter which I cannot consider, because if he retaliates he must do so within the law or stand

the consequences of unlawful action. Just what, if any, crime might be thought to have been involved upon the facts as they appeared to Mr. Ward is a question which has given me some difficulty. But, first, before I find what seems from the evidence clearly to be the complaint made to the District Attorney, or his assistants, by the defendants, let us consider whether there was any malice, and then whether there was any probable case. I shall consider the charge when I consider and discuss the representations made to the District Attorney.

First, on the question of malice, I think the plaintiff's case is sustained. And that I am led to believe by the unimportance of merely opening this mail, and Mr. Tippett's statement to Mr. Weiler characterizing the attitude of the defendants. Both of them went down to the District Attorney's office and to the Postoffice Inspector, urging that in their opinion an arrest should follow. I cannot see that they could be considered as exercising their public duty. I think they were simply retaliating on the plaintiff for the action before the Bar Association grievance committee.

On the question of probable cause, the facts as they appeared before the prosecution are what we are concerned with. First, Mr. Ward had before him that the Bar Association named Mr. White as the addressee of the letter on which the complaint was based. He had Mr. Heintzman's statement that there was some man introduced to him by Mr. Weiler who was possibly White, who was of Jewish extraction, or at least of Jewish countenance. And above all the man's name is on the list as Edward A. White. Those are appearances which would lead a man at first glance to believe that there was a real man named White, who should have received that mail sent by Mr. Ward.

On the other hand, it appears from the evidence that Mr. Ward, after his investigation, found out that there was no White at the address mentioned and no White known to own property covered by the operations of this association. He did not investigate further into the association and its books to see what property was listed under this name, so as to trace it that way. He knew Mr. Weiler had the same initials and address. Mr. Weiler's name was not on the books otherwise, and yet he attended meetings of the association as a member and once acted as secretary. All this Mr. Ward knew. The mail carrier delivered the mail to Mr. Weiler on the assumption of a mistake in the spelling of the name. Mr. Weiler had signed and receipted in his own name for a special delivery letter and openly accepted White's mail as meant for Weiler. And from the report of the attempted delivery of the registered letter it appeared clearly to Mr. Ward that Mr. Weiler after receiving these previous White letters claimed that the mail so addressed was intended for him. Then on top of all that, there was the absence of any interest or motive on the part of Mr. Weiler to open another man's mail, or to intercept it before reaching that man. I think I have attached, perhaps, more importance to that point than counsel in the case have, because it seems to me that is the fact that in all likelihood would create the view upon which all of the other facts would be arranged in case of doubt. I think any man acting with reasonable caution and giving fair consideration to the facts as they appeared to Mr. Ward before that prosecution, would not have started that prosecution; and at that time there was no probable cause, no appearances that would justify a cautious man in instituting a prosecution. Of course, it is true that if the facts, favorable and unfavorable to the prosecution, were merely turned over to the District Attorneys, leaving them to prosecute of their own volition, there would be no liability on the defendants. It would then be the District Attorney's prosecution. So at last the question comes down to this: Whether or not there was a full and fair disclosure to the District Attorney of the facts and only the facts, as they appeared. And that is a matter on which there is the greatest difficulty in the case, although I think a close examination makes pretty clear the resulting facts.

The recollection of the District Attorney and his assistants and of the Postoffice Inspector have been a little vague, and so their testimony is not now as helpful as it might have been.

What was the complaint made to them, the charge? It seems very clear that the charge or complaint made by

the Defendants was that Mr. Weiler, in order to get the business of this association, had entered on the list of property owners the name of White, who presumably was a property holder and had it entered as of 1225 Battery avenue, Mr. Weiler's home, so that Mr. Weiler might intercept Mr. White's mail and in some way interfere or prevent Mr. Ward getting the business of that association, or carrying it on. And the complaint was that Mr. Weiler on that motive had actually intercepted the mail of a real man by the name of White. That is the only complaint, in fact, which is consistent with the statute which all the parties had before them at the discussion in the District Attorneys' office, and which they all considered as the basis on which a warrant might possibly be issued. What were the representations to the District Attorney and his assistant, the one who finally authorized the issuance of the warrant? On some points there is conflict in the testimony and those, perhaps, should be put aside. On the others, it is quite clear. The District Attorney was assured that Weiler had been trying to get the business of the Association, that he made some attempts to get the business himself, that he had appeared and stated he was the representative for Mr. White. Mr. Ward told Mr. McLanahan that Mr. Eppley would testify to that, and that he, Mr. Ward, would have evidence to verify it all. I do not find in the testimony any evidence whatever of any effort on the part of Mr. Weiler to get the business of that association, or to interfere in any way with the business of that association, or Mr. Ward's conduct with it. I do not see that there is any reason for a man to believe that such action had been taken, and there was certainly no reason based on the evidence now produced. From his opening statement, Mr. Cook apparently expected that to come out in the evidence; but it did not come out. It may be said that the statement that Mr. Rosenbush had appeared before the Grievance Committee as attorney for Mr. White is somewhat overstated. That is perhaps a minor matter. But leaving aside the conflict on the evidence as to the representations made before the District Attorney, it seems to me the representation of the motives and interests and efforts made by Mr. Weiler to interfere with this business, which as I say is a misrepresentation, is a most vital consideration to the issuance of a warrant on the charge made, of intercepting another's mail for private advantage, and of the utmost importance. Mr. McLanahan states very carefully that he insisted on some explanation from Mr. Ward of a possible motive for any such crime. It seems to me to be a matter that would decidedly need an explanation, in order to come to a conclusion that Mr. Weiler was receiving mail under another man's name. As I say, I think that is one of the most important allegations or representations made before the District Attorney. And adding to that, or heightening that suggestion, is the representation that Mr. Weiler had appeared before the association and said he was an attorney for Mr. White. That is not sustained by proof, and is, in fact, denied.

Without discussing the proof any further, I find that this prosecution was without probable cause, as far as Mr. Ward was concerned. Now, as to Mr. Tippett, I think the conclusion stated in the Defendants' second prayer is correct, and I find as a matter of fact that Mr. Tippett was acting only as an attorney, a mouthpiece, so to speak, who had no original part in promoting his prosecution. I think it might very well be said that his statement to Mr. Weiler was a threat, that the prosecution would be the penalty for failing to comply with the demand made upon Mr. Weiler. On its face, the statement is difficult to distinguish from such a threat. I think that of itself, however, is not sufficient to justify an action against Mr. Tippett for malicious prosecution. I find a verdict for him.

Now, as to Mr. Ward—I do not see any substantial damage to the Defendant. Any damages that might be allowed would be largely, at least, punitive damages. I, myself, am not in sympathy with awarding punitive damages in a civil suit, which means a fine imposed to be turned over to the Plaintiff who has not lost that amount.

Nevertheless, such is the law and I must consider such an award as being demanded on the findings of fact to which I have come. So I find a verdict for the Defendant, Mr. Tippett; and I find a verdict for the Plaintiff against the Defendant, Mr. Ward, for $200.